UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: JAMES BUCCHINO and
NICOLE BUCCHINO,

No. 7-10-11493 JR

Debtors.

---

JAMES BUCCHINO and NICOLE BUCCHINO,

Plaintiffs,

v.

Adversary No. 10-1042 J

WELLS FARGO BANK, N.A.,

Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on cross motions for summary judgment.[1] At issue is whether Defendant's action in placing an "administrative pledge" on the Plaintiffs' bank account(s) after receiving notice of Plaintiffs' bankruptcy case constituted a willful violation of the automatic stay within the meaning of 11 U.S.C. § 362 (a)(3) and (k)(1).[2] This is not the first

---

[1] Plaintiffs filed a motion for summary judgment on April 15, 2010. *See* Plaintiffs' Motion for Summary Judgment (Docket No. 5). Defendant filed a motion for summary judgment and response to Plaintiffs' Motion for Summary Judgment on April 29, 2010. *See* Defendant's Motion for Summary Judgment and Response to Plaintiffs' Motion for Summary Judgment and Supporting Memorandum ("Defendant's Motion for Summary Judgment and Response")(Docket Nos. 6 and 7). Plaintiffs filed a response to the Defendants' motion for summary judgment on May 25, 2010. *See* Plaintiffs' Response to Defendant's Motion for Summary Judgment (Docket No. 11). Defendant filed a reply on June 30, 2010. *See* Reply in Support of Wells Fargo's Motion for Summary Judgment. (Docket No. 12). On July 7, 2010, Plaintiffs filed a Notice of New Authority. *See* Docket No. 13. Defendant filed a response the next day. *See* Response to Plaintiffs' Notice of New Authority (Docket No. 14).

[2] Plaintiffs also asserted in their Complaint for Violation of Stay and Damages that Wells Fargo Bank, N.A.'s actions violated 11 U.S.C. § 543, which obligates custodians with knowledge of a pending bankruptcy case to "deliver to the trustee" property of the debtor, and included in their prayer for relief a request for turnover of the deposited funds to Plaintiffs. Plaintiffs' request for turnover is moot inasmuch as the undisputed facts set forth below establish that Plaintiffs were restored access to the funds in the bank accounts at issue. *See* Undisputed Fact No. 14. Further, 11 U.S.C. § 543 applies to custodians, which are defined by the Bankruptcy Code as follows:

 (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;

 (B) assignee under a general assignment for the benefit of the debtor's creditors; or

time the Bankruptcy Court for the District of New Mexico has been asked to examine the policy of Wells Fargo Bank, N.A. ("Wells Fargo") under which it places an administrative pledge on a debtor's bank account upon learning that a debtor has filed for bankruptcy, even when Wells Fargo is not a creditor of the debtor and has, therefore, not received notice of the bankruptcy as part of the bankruptcy case.[3] Plaintiffs ask the Court to grant summary judgment on the issue of whether Wells Fargo's actions constituted a willful violation of the automatic stay and then schedule an evidentiary hearing to determine damages. Wells Fargo asserts that Plaintiffs lack standing to pursue their complaint, and that its actions comply with the requirements of the Bankruptcy Code and do not constitute a willful violation of the automatic stay.

After consideration of the undisputed facts in light of the applicable statute and relevant case law, the Court finds that the Plaintiffs do not have standing to assert a claim for willful violation of the automatic stay. Further, even if the Plaintiffs' exemption rights were sufficient to confer standing, the facts of this case do not support a finding that Wells Fargo's actions are sanctionable. The Court will, therefore, grant summary judgment in favor of Wells Fargo.

---

(C) trustee, receiver, or agent under applicable law or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.
11 U.S.C. § 101(11).

Wells Fargo Bank, N.A. is not a custodian within the meaning of 11 U.S.C. § 101(11). *See In re Camdenton United Super, Inc.* 140 B.R. 523, 525 (Bankr.W.D.Mo. 1992)(explaining, based on the legislative history of § 101(11), that "to be considered a custodian, an entity must be engaged in the general administration of the debtor's assets for the benefit of creditors.")(citations omitted). The legislative history explains that the word "custodian" was used "to facilitate drafting, and means prepetition liquidator of the debtor's property . . . . The definition is intended to include other officers of the court if their functions are substantially similar to those of a receiver or trustee." H.Rep. No. 595, 95th Cong., 1st Sess. 310 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6267.

Defendant's Motion for Summary Judgment and Response also addresses alleged claims for conversion and interference with contractual relations. *See* Defendant's Motion for Summary Judgment and Response (Docket No. 6), subsections E and F. However, the Complaint does not specifically plead these separate causes of action. The Court need not, therefore, address them in resolving the cross-motions for summary judgment.

[3] In *Jimenez v. Wells Fargo Bank, N.A. (In re Jimenez),* 335 B.R. 450 (Bankr.D.N.M. 2005)("*Jimenez I"*), the Bankruptcy Court for the District of New Mexico determined that Wells Fargo's actions constituted a willful violation of the automatic stay. That decision was reversed by the United States District Court for the District of New Mexico. *See Wells Fargo Bank, N.A. v. Jimenez,* 406 B.R. 935 (D.N.M. 2008)(*"Jimenez II")*. Judge Jacobvitz was appointed bankruptcy judge for this district after *Jimenez I* and *Jimenez II* were decided.

## SUMMARY JUDGMENT STANDARDS

It is appropriate for the Court to grant summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056. In considering a motion for summary judgment, the Court must "'examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Wolf v. Prudential Inc. Co. of America,* 50 F.3d 793, 796 (10th Cir. 1995)(quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F2d 1238, 1241 (10th Cir. 1990)). Cross motions for summary judgment raise an inference that summary judgment may be appropriate. *Crossingham Trust v. Baines, (In re Baines),* 337 B.R. 392, 396 (Bankr.D.N.M. 2006). Nevertheless, before a Court may grant summary judgment, the Court must satisfy itself that the requesting party has independently satisfied the requirements of Rule 56(c), Fed.R.Civ.P. *Harris v. Beneficial Oklahoma, Inc., (In re Harris),* 209 B.R. 990, 998 (10th Cir. BAP 1997)(citations omitted). *See also Renfro v. City of Emporia,* 948 F.2d 1529, 1534 (10th Cir. 1991)(stating that a cross motion for summary judgment does not relieve the court of its obligation to determine if a genuine issue of material fact exists).

## FACTS NOT IN GENUINE DISPUTE

There is no genuine dispute regarding the following facts:

1. Plaintiffs filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 26, 2010 (the "Petition Date"). *See* Complaint for Violation of Stay and Damages ("Complaint"), ¶ 5; Answer, ¶ 1.

2. On the Petition Date, Plaintiffs had three bank accounts at Wells Fargo Bank including one checking account and two savings accounts.[4] *See* Complaint, ¶ 6; Answer, ¶ 2. *See also* Bankruptcy Case No. 7-10-11493 JR, Amended Schedule B and C (Docket No. 9).

3. On March 26, 2010, Plaintiffs filed their Schedules. *See* Bankruptcy Case No. 7-10-11493 JR Docket No. 1. In the Schedules the Plaintiffs listed two bank accounts: 1) a checking account at Bank of America overdrawn in the amount of $1.00; and 2) a checking account at Wells Fargo with a balance of $100.00. *Id.* at Schedule B.

4. On March 26, 2010, Plaintiffs claimed an exemption in the amount of $100.00 in one bank account at Wells Fargo. *Id.* at Schedule C.

5. On March 30, 2010, Wells Fargo received electronic notification of the filing of the Plaintiffs' Chapter 7 case. *See* Plaintiff's Motion for Summary Judgment, Exhibit A, Letter dated March 30, 2010 from Luana Tafoya, Operation Manager at Wells Fargo to Michael Daniels ("Daniels Letter"); Affidavit of Luana Tafoya in Support of Defendant's Motion for Summary Judgment and Response to Plaintiffs' Motion for Summary Judgment ("Tafoya Affidavit"), ¶ 2 and Exhibit B thereto.

6. On the same date, Wells Fargo placed an "administrative pledge" on the following accounts (the "Bank Accounts" or "Accounts") and noted the accounts on its system as "in bankruptcy status":

   a. Savings Account ending in 1541 reflecting a balance of $10,778.58;
   b. Savings Account ending in 1590 reflecting a balance of $654.21; and
   c. Checking Account ending in 9170 reflecting a balance of $1,909.58.

   *See* Daniels Letter.

---

[4] Plaintiffs assert that Nicole Bucchino had only signatory authority over the savings account ending in 1541, and that the account was owned solely by her mother who deposited funds in the account received from an inheritance. *See* Complaint, ¶ 6. Wells Fargo disputes that Ms. Bucchino had mere signatory authority over that account. *See* Answer, ¶ 2. Whether Plaintiffs were joint owners or mere signatories on this account does not affect the Court's analysis and resolution of the cross-motions for summary judgment.

7. Wells Fargo is not a creditor of the Plaintiffs and holds no perfected security interest in the any of the Bank Accounts, nor has Wells Fargo at any material time held any setoff rights with respect to any of the Bank Accounts. *See* Complaint, ¶ 8; Answer, ¶ 4. Bankruptcy Case No. 7-10-11493 JR - Schedules D – F, Docket No. 1.

8. Wells Fargo transmitted the Daniels Letter by facsimile to Plaintiffs' counsel on March 30, 2010 at approximately 7:00 p.m. notifying Plaintiffs' counsel that it had placed the funds in "bankruptcy status, which means the funds are no longer available to your client(s.)." *See* Daniels Letter.

9. The Daniels Letter includes the following statement:

> Wells Fargo is prepared to immediately follow the trustee's direction regarding the Estate Funds, and you may be able to expedite the trustee's decision. *Id.*

10. Wells Fargo also attempted to transmit by facsimile a similar letter to Clarke C. Coll, the Chapter 7 Trustee, on the same date. Tafoya Affidavit, ¶ 6 ("Wells Fargo attempted twice unsuccessfully to fax a similar letter to the bankruptcy trustee . . ."); Affidavit of Clarke C. Coll ("Coll Affidavit"), ¶ 3 ("I had not received any notice from Wells Fargo Bank of this seizure.").

11. In the letter from Wells Fargo to the Chapter 7 Trustee, dated March 30, 2010 ("Trustee Letter"), which it unsuccessfully attempted to fax to the Trustee, Wells Fargo states:

> The Estate Funds are now in bankruptcy status, which means that the funds are payable only to you or your order. . . . The Estate funds will remain in bankruptcy status until we receive direction from you regarding their disposition, or June 18, 2010, which is 31 days after the scheduled First Meeting of Creditors. If you wish us to take any other action with the Estate Funds, please complete and sign the enclosed form, and fax it to me . . .

> Trustee Letter, attached to the Tafoya Affidavit as Exhibit B.

12. On March 31, 2010, counsel for Plaintiffs informed the Chapter 7 Trustee that Wells Fargo had placed an administrative pledge on the Bank Accounts. *See* Coll Affidavit, ¶ 2; Tafoya Affidavit, ¶ 8.

13. On March 31, 2010, Wells Fargo received instructions from the Chapter 7 Trustee authorizing Wells Fargo to release of the funds in the Bank Accounts to Plaintiffs. Tafoya Affidavit, ¶ 8; Coll Affidavit, with attached copies of e-mail communications between himself, Plaintiffs' counsel, and Wells Fargo.

14. On March 31, 2010, Wells Fargo released the administrative pledge on the three Bank Accounts. Tafoya Affidavit, ¶ 10; Affidavit of Nicole Bucchino, ¶ 7.

15. Plaintiffs filed this Adversary Proceeding on March 31, 2010.

16. On April 12, 2010, after the filing of this adversary proceeding, Plaintiffs amended their Schedule B to list the Bank Accounts, as follows

| Description | Value |
|---|---|
| Wells Fargo Bank checking account | $ 1,909.58 |
| Wells Fargo Bank savings account | $    654.21 |
| Wells Fargo Bank savings account (Mother's inheritance; no beneficial interest) Balance in inheritance account is $10,778.58 | $        1.00 |

*See* Bankruptcy Case No. 7-10-11493 JR – Amended Schedule B (Docket No. 9).

17. On April 12, 2010, Plaintiffs also amended their Schedule C to claim an exemption in "Bank accounts" in the amount of $2,564.79. *See* Bankruptcy Case No. 7-10-11493 JR – Amended Schedule C (Docket No. 9).

DISCUSSION

Plaintiffs claim that Wells Fargo's administrative freeze of the Bank Accounts violated the automatic stay under 11 U.S.C. § 362(a)(3).[5] Wells Fargo asserts that Plaintiffs lack standing to assert their claim and, in any event, no stay violation occurred. The Court will first address Plaintiffs' standing to assert their claim that Wells Fargo violated the automatic stay. Standing is a threshold issue.[6]

1. **<u>Standing</u>**

Wells Fargo asserts that Plaintiffs lack standing to pursue their claim for willful violation of the automatic stay because Plaintiffs had no rights in or legal control of the Bank Accounts upon the commencement of their bankruptcy case. Wells Fargo reasons that only the Chapter 7 Trustee, who is charged with administering property of the estate under 11 U.S.C. § 704,[7] has standing to pursue an action for violation of 11 U.S.C. § 363(a)(3), which prohibits "acts to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).[8] The Plaintiffs counter that unless and until

---

[5] Section 362(a)(3) provides:
  Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
    (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]
  11 U.S.C. § 362(a)(3).
[6] *Jimenez II,* 406 B.R. at 941(stating that "Debtor's standing to assert a violation of the automatic stay is a threshold issue.").
[7] Section 704 provides, in relevant part:
  The trustee shall –
    (1) collect and reduce to money the property of the estate for which such trustee serves . . .
  11 U.S.C. § 704(a)(1).
[8] The Court notes that a bank account "consists of nothing more or less than a promise to pay, from the bank to the depositor." *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 21, 116 S.Ct. 286, 290, 133 L.Ed.2d 258 (1995)(citing *Bank of Marin v. England,* 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966)(remaining citation omitted)). Thus, technically, the property of the estate at issue is not the funds held in the bank account, but instead, the contractual interest in obtaining the funds payable on demand. Nevertheless, courts have little trouble finding that bank accounts constitute property of the bankruptcy estate. *See, e.g., In re Figueira,* 163 B.R. 192, 194 (Bankr.D.Kan. 1993)(stating that "[u]nquestionably, the debtors' bank account and any balance in it became property of the estate upon the filing of their petition.")(citation omitted); *Sousa v. Bank of Newport,* 170 B.R. 492,

an objection to a claim of exemption is sustained, property claimed as exempt is exempt and remains in the possession and control of the debtor. Plaintiffs assert that Wells Fargo's actions therefore caused them injury by depriving them of the right to possession and control of funds claimed as exempt.[9]

The "case" or "controversy" requirement of Article III of the Constitution[10] requires that for the Plaintiffs to have standing they must allege: 1) an injury in fact (*i.e.,* a concrete and particularized invasion of a legally protected interest that is actual or imminent and not merely conjectural or hypothetical); 2) a "fairly traceable" connection between the alleged injury and the alleged conduct of Defendant; and 3) that it is likely (and not merely speculative) that the alleged injury will be redressed by the relief the Plaintiffs seek.[11] The legally protected interest need not

---

494 (D.R.I. 1994)(property of the estate "includes funds held in a checking or savings . . . ")(citing *Homan v. Kemba Cincinnati Credit Union (In re Homan),* 116 B.R. 595, 599 (Bankr.S.D.Ohio 1990)).

[9] The Court notes that during the entire period of the "administrative pledge" placed on the Bank Accounts, the Plaintiffs had claimed an exemption in only $100.00 of the funds in the Bank Accounts. Thus, Plaintiffs' argument for standing is necessarily limited to the freeze placed on their $100.00 claimed exemption.

[10] This Article III constitutional standing requirement applies in bankruptcy court, even though the bankruptcy court is an Article I court. *See generally Kilen v. United States (In re Kilen)*, 129 B.R. 538, 542-543 (Bankr. N.D.Ill. 1991)(finding that "it is obvious that the constitutional standards of Article III which bind the district court also bind the bankruptcy court[ ]" and concluding that "bankruptcy courts are limited to resolving disputes involving actual cases or controversies."). *See also Smith v. Fairbanks Capital Corp. (In re Smith)*, 299 B.R. 687, 689 n. 1 (Bankr. S.D.Ga. 2003)(noting that "[b]ecause the jurisdiction of district courts is limited by the case or controversy requirement, so is the jurisdiction of the bankruptcy courts.")(citations omitted). *Cf. In re Orlando Investors L.P.*, 103 B.R. 593, 596 and 597 (Bankr. E.D.Pa. 1989) (applying constitutional standing requirements to bankruptcy court regardless of whether the Article III case or controversy provision applies based on "prudential concerns"); *In re McCartney*, 336 B.R. 588, 591 (Bankr. M.D.Ga. 2006) (finding that the constitutional standing requirement applies to any federal court, including Article I courts).

Bankruptcy jurisdiction is vested in the district court. *See* 28 U.S.C. § 1334(a) and (b) (vesting bankruptcy jurisdiction in the district courts). The district court is an Article III court. Bankruptcy courts are an adjunct of the district court. 28 U.S.C. § 151(a). Under 28 U.S.C. § 157(a), district courts may refer the exercise of bankruptcy jurisdiction to bankruptcy judges subject to the limitations set forth in 28 U.S.C. § 157(b), (c) and (d). Under 28 U.S.C. § 157(d), the district court may withdraw in whole or in part any case or proceeding referred to the bankruptcy court. Since the bankruptcy court's jurisdiction is derived from the jurisdiction vested in the districts courts, a bankruptcy court's exercise of such jurisdiction necessarily is subject to any constitutional limitations on the exercise of such jurisdiction by a district court. "The district court cannot delegate to the bankruptcy court for hearing and determination that which the district court itself cannot hear and determine." *Kilen,* 129 B.R. at 542. Moreover, the district court would be unable to withdraw its referral of the exercise of bankruptcy jurisdiction to the bankruptcy court, as expressly permitted by 11 U.S.C. § 157(d), if the bankruptcy court were to exercise jurisdiction not vested in an Article III court.

[11] *See, e.g., Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 128 S.Ct. 2531, 2535, 171 L.Ed.2d 424 (2008) ("And in order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact ( *i.e.*, a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation ( *i.e.*, a 'fairly ...

necessarily be an economic interest.[12] In addition, in response to a summary judgment motion, the Plaintiffs "must 'set forth' by affidavit or other evidence 'specific facts'" to demonstrate standing.[13] Courts are split regarding whether a chapter 7 debtor has standing to pursue a claim for violation of the automatic stay under 11 U.S.C. § 362(a)(3) when a bank that does not have an offset right places an administrative freeze on a bank account.[14] For the reasons explained below, the Court finds that Plaintiffs lack standing to pursue their claim.

---

trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability ( *i.e.*, it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit")(citation and some internal quotation marks omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)(standing requires 1) "an invasion of a legally protected interest" which is "concrete and particularized", and "actual or imminent, not conjectural or hypothetical"; 2) that is "fairly traceable to the challenged action of the defendant"; and 3) that is likely to be "redressed by a favorable decision")(citations and internal quotation marks omitted); *The Wilderness Society v. Kane County, Utah*, 581 F.3d 1198, 1209-1210 (10th Cir. 2009)("Constitutional standing requires: (1) an injury in fact, (2) causation, and (3) redressability. To satisfy the injury in fact prong, a plaintiff must show an invasion of a legally protected interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Causation requires that the injury is fairly traceable to the challenged action of the defendant. Lastly, the redressability prong is met when it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.")(internal citations and quotation marks omitted). Because the Court finds that Plaintiffs do not satisfy the requirements for constitutional standing, it need not consider whether Plaintiffs meet the requirements of prudential standing. *See Board of County Commissioners of Sweetwater County v. Geringer,* 297 F.3d 1108, 1112 (10th Cir. 2002)(explaining that "a party that has satisfied the requirements of constitutional standing may nonetheless be barred from invoking a federal court's jurisdiction" by failing to meet the requirements of prudential standing.)(citation omitted).

[12] *See Kane County*, 581 F.3d at 1229-1230 (acknowledging that "statutes granting parties with aesthetic interests statutory rights [can confer standing] to challenge agency action" but finding that standing for purposes of the case at bar was "not predicated on any statutes creating judicially enforceable rights of an aesthetic or environmental nature.")

[13] *See Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136 (1992)(explaining that because the requirements for standing are "an indispensable part of plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . .")(citation omitted).

[14] Courts that have determined that the debtor has standing in this situation include: *In re Mwangi,* 432 B.R. 812 (9th Cir. BAP 2010) and *Jimenez I,* 335 B.R. 450, *rev'd, Jimenez II,* 406 B.R. 935. *Cf. Moreira v. Digital Employees Federal Credit Union (In re Moreira)*, 173 B.R. 965, 973 (Bankr. D.Mass.1994 (holding that debtor has standing to challenge setoff of an account that the debtor claimed exempt).

Several courts, including the United States District Court for the District of New Mexico, have held that a chapter 7 debtor lacks standing to pursue a claim for violation of the automatic stay under 11 U.S.C. § 362(a)(3) when the property constitutes property of the estate for which a claim of exemption has not yet been allowed. *See Jimenez II,* 406 B.R. 935; *In re Calvin*, 329 B.R. 589, 601 (Bankr. S.D.Tex. 2005) (holding that the debtor had no standing to assert that a freeze of a bank account that is property of the estate violates the automatic stay; "any cause of action for improper handling of the funds belonged to the Trustee, not the Debtors."); *In re Laux*, 181 B.R. 60, 61 (Bankr. S.D. Ill. 1995) (finding that the debtor has no standing to allege that a freeze of a bank account that is property of the estate violates the automatic stay because "the only party with standing to raise a violation of § 362(a)(3) is the trustee."); *In re Briggs*, 143 B.R. 438, 447 (Bankr. E.D.Mich. 1992) (reasoning that while the asset at issue is property of the estate, the debtor lacked standing to assert violation of § 362(a)(7) for the same reason that the debtor lacked standing to assert a violation under § 362(a)(3) or (4)).

A. <u>Exempt property is not exempt unless and until a claim of exemption is allowed.</u>

Plaintiffs premise their argument for standing in part on the proposition that property claimed as exempt is exempt, and that a debtor has the right to exercise possession and control over such property unless and until an objection to the claim of exemption is sustained. That premise is flawed.

Property of the estate is not exempt unless and until the time to object to the claim of exemption expires or a timely objection is overruled.[15] Upon allowance of a debtor's claim of exemption, exempt property that a trustee may not administer revests in the debtor and is consequently excluded from the bankruptcy estate.[16] Thus the right to payment of funds on

---

This Court is not bound by *Jimenez II,* the decision of the United States District Court for the District of New Mexico. *See In re Romano,* 350 B.R. 276, 281(Bankr. E.D.La. 2005)(holding "that a single decision of a district court in this multi-judge district is not binding upon this [bankruptcy] court."); *In re Barakat,* 173 B.R. 672, 678-679 (Bankr. C.D.Cal. 1994), *aff'd,* 99 F.3d 1520 (9th Cir. 1996)(explaining that because "most appellate decisions of the district court are not decisions of the district court *en banc*, but are decisions of a given district judge and are not binding on other district judges of that district, they should not be seen as binding on the bankruptcy judges of that district.")(citing *In re Gaylor,* 123 B.R. 236, 241-43 (Bankr.E.D.Mich. 1991)). *But see In re Shunnarah,* 273 B.R. 671, 672-673 (M.D.Fla. 2001)(finding that the bankruptcy court is bound to follow a published opinion of the District Court unless an opinion that contains a different holding is published.")(citing *In re Phipps,* 217 B.R. 427 (Bankr.W.D.N.Y. 1998)); *Rand Energy Co. v. Strata Directional Technology, Inc. (In re Rand Energy Co.),* 259 B.R. 274, 276 (Bankr.N.D.Tex. 2001)(finding that under the federal hierarchical judicial structure, a decision of the district court is binding precedent for the bankruptcy court); *Bryant v. Smith,* 165 B.R. 176, 180 (W.D.Va. 1994)(reasoning that because bankruptcy courts are not Article III courts, the bankruptcy court is not "free to ignore the clear precedent of the district court . . .").

[15] *See In re Brayshaw*, 912 F.2d 1255, 1256 (10th Cir. 1990) ("Under [11 U.S.C. § 522( l)], property claimed as exempt automatically becomes exempt [upon expiration of the objection period] unless a party objects."). *See also In re Luongo*, 259 F.3d 323, 340 n.3 (5th Cir. 2001) ("property declared exempt on the debtor's schedules becomes exempt if there are no objections"); *Mercer v. Monzack*, 53 F. 3d 1, 3 (1st Cir. 1995) (property claimed as exempt becomes exempt by operation of law in the absence of a timely objection); *In re Allan*, 431 B.R. 580, 583 (Bank. M.D.Pa. 2010) (if no timely objection to a claim of exemption made, "the claimed property becomes exempt."); *In re Marriott*, 427 B.R. 887, 895 (Bankr. D.Idaho 2010) ("Property claimed as exempt by a debtor is not deemed exempt until either the time for filing objections to the debtor's claim of exemption expires under Rule 4003(b), or if an objection is filed, until the bankruptcy court allows the challenged exemption."). *Cf. Schwab v. Reilly*, 130 S.Ct. 2652, 2661 n. 9, 177 L.Ed.2d 234 (2010). (recognizing bankruptcy court decisions holding that where a debtor claims an exemption in property, the debtor is permitted to exclude from the estate only interests in property that become exempt absent objection).

[16] *See Schwab v. Reilly*, 130 S.Ct. at 2658 ("If an interested party fails to object within the time allowed, a claimed exemption will exclude the subject property from the estate even if the exemption's value exceeds what the Code permits."); *In re Campbell*, 313 B.R. 313, 321 (10th Cir. BAP 2004) ("Property claimed as exempt is property of the estate on a debtor's petition date. It revests in the debtor when the exemption is allowed, either by court order or because of the lack of a timely objection.")(citations omitted). *See also In re Scrivner*, 535 F.3d 1258, 1264 (10th Cir. 2008) ("Generally, if the debtor claims property as exempt and 'a party in interest' does not object, that property is exempt from property of the estate.")(citations omitted); *Luongo*, 259 F.3d at 338 n.1 ("exempt property leaves

demand from a bank account in which the debtor claims an exemption is excluded from the estate and revests in the debtor only when the time to object to the claim of exemption expires or a timely objection is overruled. Here, because the time to object to Plaintiffs' claim of exemption had not expired at the time Wells Fargo placed the Bank Accounts in "bankruptcy status," the Plaintiffs' property interest in the Bank Accounts was not exempt and remained property of the bankruptcy estate.

B. The Plaintiffs did not suffer injury in fact sufficient to confer standing.

Plaintiffs suffered no injury in fact fairly traceable to Wells Fargo's actions and, therefore, do not have standing to assert a claim under 11 U.S.C. § 362(k)(1). That section provides:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
>
> 11 U.S.C. § 362(k)(1).

Similar to the injury-in-fact requirement for constitutional standing, under 11 U.S.C. § 362(k)(1) injury likewise is a requisite to recovery on a claim for willful violation of the automatic stay.[17]

Plaintiffs cannot show an invasion of a legally protected interest during the period they were denied access to the Accounts. The only legally protected interest Plaintiffs identify is their claim of exemption in the Bank Accounts. However, Wells Fargo's actions did not invade that

---

the estate and vests in the debtor")(citation omitted); *In re Bell*, 225 F.3d 203, 215 (2nd Cir. 2000) (the effect of property becoming exempt is "to remove [the] property from the estate and to vest it in the debtor")(citing *Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991)); *Gamble v. Brown (In re Gamble),* 168 F.3d. 442, 443 (11th Cir. 1999)("exempt property is not part of the bankruptcy estate"). However, if an interest in an asset is exempted from the estate but not the entire asset, such as a vehicle which the trustee may sell for the benefit of creditors, "title to the asset will remain with the estate pursuant to [11 U.S.C.] § 541, and the debtor will be guaranteed a payment in the dollar amount of the exemption." *Schwab v. Reilly*, 130 S.Ct. at 2667.

[17] As stated by the Supreme Court in *Lujan v. Defenders of Wildlife,* "'the injury required by Article III for constitutional standing may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Lujan,* 504 U.S. at 578, 112 S.Ct. at 2145(quoting *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); *Kane County*, 581 F.3d at 1230 (same). *Accord Zivotofsky ex rel. Ari. Z v. Secretary of State*, 444 F.3d 614, 617 (D.C. Cir. 2006). However, Congress cannot by statute confer standing to sue on a class of citizens who suffer no distinctive concrete harm. *Lujan*, 504 U.S. at 576-77, 112 S.Ct. at 2145.

interest because such actions did not impair the Plaintiffs' exemption rights. Wells Fargo neither deprived Plaintiffs access to property during a time that Plaintiffs had a right to access such property, nor did Wells Fargo jeopardize Plaintiffs' full realization of their interest in any exempt property upon allowance of Plaintiffs' claim of exemption.[18]

Plaintiffs had no legal entitlement to draw and spend funds from the Bank Accounts during the time Wells Fargo denied them access to funds. Upon the commencement of their bankruptcy case, the Plaintiffs' legal and equitable interests in the Bank Accounts became property of the estate in accordance with 11 U.S.C. § 541(a)(1).[19] The Bank Accounts remained property of the estate even though subject to a claim of exemption.[20] Plaintiffs retained an inchoate interest in the Accounts to the extent claimed exempt pending allowance or disallowance of their claim of exemption.[21] "An inchoate interest is an interest that has not fully developed, matured, or vested."[22] Until the Plaintiffs' property interest in the Accounts was deemed or determined to be exempt, any funds obtained by making a demand on Wells Fargo to make payment from the Accounts likewise would be property of the estate, meaning that the

---

[18] *In re Mwangi,* 432 B.R. 812, 821 (9th Cir. BAP 2010), the Ninth Circuit Bankruptcy Appellate Panel found that the debtor's claim of exemption in bank account funds was sufficient to confer standing on the debtor to assert a violation of the automatic stay as a result of Wells Fargo Bank's denial to them of the right to obtain funds by making a demand on Wells to make payment on the Accounts. The *Mwangi* Court based its finding of standing on its determination that the debtor who claims a bank account exempt has an inchoate interest in the account pending allowance or disallowance of the claim of exemption. The Court does not explain how the debtor's right to claim an account as exempt, coupled with the inchoate interest pending allowance or disallowance of the exemption, results in an injury in fact to the debtor fairly traceable to the conduct of the bank.

[19] 11 U.S.C. § 541(a)(1) provides: "except as provided in subsections (b) and (c)(2) of this section," which are not applicable here, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *See also In re Pimental,* 142 B.R. 26, 28 (Bankr.D.R.I. 1992)(noting that "upon filing a Chapter 7 petition, the debtor is automatically 'divested of virtually all property interests held as of the commencement of the case, and in turn, these interests immediately vest in the estate.'")(quoting *Commercial Credit Business Loans, Inc. v. Northbrook Lumber Co.,* 22 B.R. 992 (N.D.Ill. 1982))

[20] *Campbell,* 313 B.R. at 321 (stating that "[p]roperty claimed as exempt is property of the estate on a debtor's petition date. It revests in the debtor when the exemption is allowed, either by court order or because of the lack of a timely objection.").

[21] *See In re Mwangi,* 432 B.R. at 821 (a debtor has an inchoate interest in a bank account claimed as exemption prior to allowance or disallowance of the claim of exemption).

[22] *Id.*

funds would belong to the bankruptcy estate subject to the claim of exemption.[23] A debtor has no right to spend funds that belong to the estate even if subject to a claim of exemption. Such funds do not belong to the debtors. Moreover, the debtors' duty pursuant to 11 U.S.C. § 521(a)(4)[24] to surrender to the chapter 7 trustee their rights in bank accounts and estate funds claimed exempt, at least when their claim of exemption is denied,[25] creates a corresponding duty not to draw and spend funds from the accounts prior to allowance or disallowance of the claim of exemption in derogation of that duty.[26]

Wells Fargo's actions did not create any risk to the Plaintiffs that funds on deposit in the Bank Accounts would be unavailable to them on demand if and when they obtained the right to use funds drawn from the Accounts. Wells Fargo did not setoff any funds,[27] or exercise control over the Accounts after allowance of a claim of exemption in the Accounts, or fail to comply with a directive of the Chapter 7 Trustee.

Accordingly, the Plaintiffs' suffered no injury to a legally protected interest fairly traceable to Wells Fargo's actions. Consequently, the Plaintiffs have no standing to assert their

---

[23] *See Figueira,* 163 B.R. at 194 (stating that "[u]nquestionably, the debtors' bank account and any balance in it became property of the estate upon the filing of their petition.").

[24] 11 U.S.C. § 521(a)(4), provides:
    The debtor shall –
        If a trustee is serving in the case . . . surrender to the trustee all property of the estate . . . .
    11 U.S.C. § 521(a)(4).

[25] Courts are split regarding *when* property claimed as exempt must be surrendered under 11 U.S.C. § 521(a)(4). *Compare In re Rains*, 428 F.3d 893, 907 (9th Cir. 2005)(noting that once the debtor's exemption was denied, the debtor "became legally obligated to deliver the funds to the trustee.")(citing 11 U.S.C. § 524) and *In re Garrett*, 225 B.R. 301, 302-303 (Bankr. W.D.N.Y. 1998) ("The fundamental precept of 11 U.S.C.A. § 521 is that a debtor must surrender all property of the estate, unless it is the subject of an exemption.") *with In re Fleming,* 424 B.R. 795, 806 (Bankr. W.D.Mich. 2010)(acknowledging that "the debtor is under a statutory duty to surrender what now becomes the estate's property immediately upon the commencement of the case regardless of what might be the debtor's intention concerning its exemption.").

[26] *See Fleming,* 424 B.R. at 806 (stating that from the duty to turnover property of the estate "comes the debtor's corresponding obligation not to spend or otherwise dissipate the targeted property unless and until its exemption is finally allowed."). *See also, In re Vann*, 113 B.R. 704, 708 (Bankr. D.Colo. 1990)(debtor has no authority to spend funds claimed as exempt that are property of the estate until the claim of exemption is allowed).

[27] A debtor would have standing to assert that a setoff of the funds claimed as exempt violated the automatic stay because the setoff would render the funds unavailable to the debtor if and when the funds became exempt.

claim against Wells Fargo under 11 U.S.C. § 362(k).[28] In these circumstances, only the Chapter 7 Trustee, who is charged with administering property of the estate, has standing to assert that Wells Fargo impermissibly exercised control over property of the estate by placing a hold on the Accounts resulting in the denial of access to funds.

The Court is not unsympathetic to the Plaintiffs. As a practical matter, individual chapter 7 debtors who claim funds on deposit in a bank account as exempt often use those funds when there is no reasonable basis to object to the exemption in order to pay ordinary and necessary living expenses despite the fact that such funds constitute property of the estate until the time to object to the claim of exemption expires.[29] Use of funds claimed as exempt in the debtor's bank account prior to that time often can be critical to a debtor making a mortgage or car payment, buying food or medicine, or paying a utility bill, and is consistent with the historical purpose of exemption laws:

> The historical purpose of these exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge. [This] purpose has not changed….
>
> House Report on the Bankruptcy Reform Act of 1978, H.R.Rep. No. 95-595, at 126 (1977).[30]

---

[28] *See Jimenez II*, 406 B.R. at 943 (a debtor without legal entitlement to access funds claimed as exempt has no standing to complain about being denied access to the funds); *Calvin*, 329 B.R. at 601 (only the trustee may assert a cause of action for improper handling of funds that are property of the estate). *See also, Briggs*, 143 B.R. at 445 and 448 (reasoning that because § 362(a)(3) relates solely to property of the estate, the credit union's refusal "to release property of the estate to the *Debtor* (as opposed to the trustee) clearly is not a stay violation[ ]" and finding that the debtor lacked standing to assert a violation of § 362(a)(3), (4), or (7)(emphasis in original)).

[29] Unless extended by the court, the period to object to a claim of exemption is 30 days after conclusion of the meeting of creditors conducted pursuant to 11 U.S.C. §341(a). Rule 4003(b)(1), Fed.R.Bankr. P. In a typical individual chapter 7 consumer case, where the §341(a) creditors meeting is held and concluded on the date when it is first set, the 30-day period expires 51 to 70 days after commencement of the bankruptcy case. *See* Rule 2003(a), Fed.R.Bankr.P. (requiring that in a chapter 7 case the "meeting of creditors is be held no fewer than 21 and no more than 40 days after the order for relief.").

[30] Quoted in *In re Morehead*, 283 F.3d 199, 206 (4th Cir. 2002). *See also In re Reid*, 757 F.2d 230, 236 (10th Cir. 1985)("'The purposes of the [Oklahoma] exemption statute are to prevent improvident debtors from becoming subjects of charity by preserving to them sufficient definitely classified property that they may maintain a home for themselves, and to prevent inconsiderate creditors from depriving them of the necessities of life.'" (quoting *Security Building & Loan Ass'n v. Ward,* 174 Okl. 238, 50 P.2d 651, 657 (1935)(remaining citation omitted)).

Because the value of the funds in a bank account is readily quantifiable, and funds can be claimed exempt up to specified dollar limits, usually no party in interest, including the Chapter 7 Trustee, objects to the claimed exemption or to the debtor's use of the funds before they are exempt. No harm results to the estate from the debtor's use of funds prior to the allowance of the claimed exemption because the exemption is nearly always allowed as a result of the expiration of the time to object to the claim of exemption.[31] However, the Court cannot find that a debtor has suffered an injury sufficient to confer standing as a result of being prevented access to funds on deposit in a bank account before the account is exempt when the debtor is not legally entitled to use the funds and the debtor's ultimate realization of rights in such property claimed as exempt is not put in jeopardy. The real harm to debtors that can occur by blocking their access to bank accounts claimed as exempt does not invade a legally protected interest notwithstanding the practical reality that chapter 7 individual debtors routinely use funds from bank accounts claimed as exempt to pay ordinary and necessary living expenses in circumstances similar to the instant case. Consequently, this Court concludes that the Plaintiffs lack standing to pursue a claim of stay violation under 11 U.S.C. § 362(a)(3) based on Wells Fargo's action in barring the Plaintiffs from obtaining funds from the Bank Accounts during the period prior to the allowance of Plaintiffs' claimed exemption.[32]

---

[31] If the claim of exemption is reasonably susceptible to dispute, the debtor has a strong incentive not to spend funds or otherwise transfer or waste property claimed as exempt before the exemption is allowed because doing can result in denial of the debtor's discharge. *See, e.g., Menotte v. Cutaia (In re Cutaia),* 410 B.R. 733, 738 (Bankr. S.D.Fla. 2008) (the debtor sold a Rolex watch post-petition that he claimed as exempt before the exemption was allowed; the court sustained the trustee's objection to the claim of exemption on the ground that the debtor substantially undervalued the watch, and under 11 U.S. C. § 727(a)(2)(B) denied the debtor a discharge based on his transfer of estate property); *Dzikowski v. Gauthier (In re Gauthier)*, 2007 WL 1580100, *3-4 (Bankr. S.D.Fla. May 30, 2007)(the debtor's claim of exemption was disallowed, and the debtor was denied a discharge for knowingly and fraudulently transferring estate property claimed as exempt before the exemption was allowed).

[32] A lingering question is *why* Wells Fargo has instituted a policy of informing itself when its customers commence a bankruptcy case. Although the Court finds that the Plaintiffs have not suffered an injury sufficient to confer standing to assert their claims, the Court recognizes the harm to debtors that Wells Fargo's policy can cause as a practical matter. Wells Fargo justifies its policy by reference to its turnover obligation under 11 U.S.C. §542 and its desire to protect itself from liability for failing to discharge that obligation. However, "Wells Fargo is not a creditor

-15-
Case 10-01042-j    Doc 15-1    Filed 09/29/10    Entered 09/29/10 16:36:15 Page 15 of 18

2. **Stay Violation**

Even if the Court were to accept that the Plaintiffs have standing based on their claim of exemption in the amount of $100.00 with respect to the funds in the Bank Accounts, the undisputed facts do not support a finding that Plaintiffs are entitled to damages for willful violation of the automatic stay.[33] Plaintiffs assert that under *Mwangi,* Wells Fargo's action in placing an administrative freeze on a debtor's bank account violates the automatic stay.

In *Mwangi,* Wells Fargo barred the debtors access to bank accounts claimed as exempt, and notified the chapter 7 trustee in accordance with its policy that it would pay on the accounts at the trustee's request or order, but took no action after it did not receive any instructions from the chapter 7 trustee. The *Mwangi* court found that the turnover obligation of a depository bank with respect to a demand deposit account is self-executing, and not dependant on receipt of demand from the chapter 7 trustee. *Mwangi,* 432 B.R. at 823. The Court determined that Wells Fargo's actions constituted an exercise of control over property of the estate in violation of the automatic stay because the bank refused to release the funds claimed exempt upon receiving a demand from the debtors, and did not seek further instruction from the bankruptcy court, but

---

and would have no reason to expect to receive notice of the bankruptcy filing from this Bankruptcy Court or from the Plaintiff. Instead, Wells Fargo states that it had actual knowledge of the bankruptcy from the electronic docket system. In gaining actual knowledge with regard to Chapter 7 bankruptcy filings by account holders, Wells Fargo has removed itself from the [safe harbor] protection of § 542(c)." *Jimenez I*, 335 B.R. at 462. *See* 11 U.S.C. § 542(c)(providing that "an entity that has no notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith . . ."). Similarly, absent knowledge of a debtor's bankruptcy case, a party whose actions constitute a technical violation of the automatic stay cannot be held liable for damages. *See, Kline v. Tiedemann (In re Kline),* 424 B.R. 516, 523 (Bankr.D.N.M. 2010)("Actions taken without notice or knowledge . . . of the commencement or pendency of the bankruptcy case nevertheless violate the stay, but the violation is merely 'technical' and no damages are to be awarded.")(citations omitted). Wells Fargo appears to have voluntarily subjected itself to turnover obligations and potential liability by informing itself of a depositor's bankruptcy filing when it has no obligation to do so, and relies on the turnover obligation and potential liability to justify its actions.

[33] Section 362(k)(1) provides, in relevant part:
> an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages

11 U.S.C. § 362(k)(1).

instead "chose to hold the funds until a demand was made for payment that it alone deemed appropriate." *Id.* at 824. The *Mwangi* court remanded the case for a determination of whether Wells Fargo's actions constituted a willful violation of the automatic stay, directing the bankruptcy court to consider whether Wells Fargo's continued "administrative freeze and retention of the account funds claimed exempt, in the absence of instructions from the trustee, was reasonable in light of [debtors'] demand that the subject account funds be released for their use." *Id.* at 825.

This Court finds that Wells Fargo's actions in the instant case did not violate the stay. Pursuant to 11 U.S.C. § 323(a) and 11 U.S.C. §541(a)(1),[34] the Chapter 7 Trustee as representative of the bankruptcy estate succeeded to the Plaintiffs' rights as payees on demand with respect to the Bank Accounts. Wells Fargo barred Plaintiffs access to the Bank Accounts, but its action in placing the Accounts in "bankruptcy status" did not deny access to the Chapter 7 Trustee. To the contrary, Well Fargo promptly and without demand affirmatively gave notice that it would immediately honor a demand by the Chapter 7 Trustee for payment on the Bank Accounts, thereby, in effect, substituting the Chapter 7 Trustee for the depositors as the promisee of Wells Fargo's obligation to pay on demand. The Chapter 7 Trustee promptly instructed Wells Fargo to give the Plaintiffs access to the funds in the Bank Accounts, and Wells Fargo, in fact, promptly restored access to the Accounts to the Plaintiffs upon receiving those instructions. Plaintiffs' own Affidavit recites that access to the Bank Accounts was restored within one day after Plaintiffs were barred access to draw funds from the Accounts. Wells Fargo's actions substituting the Chapter 7 Trustee for the Plaintiffs as the promisee of the pay on demand rights associated with the Bank Accounts, coupled with its immediate honor of the Trustee's prompt

---

[34] Section § 323(a) provides that "[t]he trustee in a case under this title is the representative of the estate." 11 U.S.C. § 323(a). As discussed above, under 11 U.S.C. § 541(a)(1), Plaintiffs' legal and equitable interests in the Bank Accounts became property of the estate upon commencement of the Plaintiffs' bankruptcy case.

demand on the Accounts, did not constitute an exercise of control over property of the estate contrary to 11 U.S.C. § 362(a)(3). Thus, no stay violation occurred.

## CONCLUSION

Based on the foregoing, the Court concludes that Plaintiffs lack standing to assert a claim for willful violation of the automatic stay under 11 U.S.C. § 363(k)(1) based on an alleged violation of the automatic stay under 11 U.S.C. § 362(a)(3). Even if Plaintiffs had standing, Wells Fargo's actions under the circumstances of this case do not violate 11 U.S.C. § 362(a)(3). The Court will, therefore, grant Wells Fargo's motion for summary judgment. Wells Fargo's request for attorneys' fees and sanctions against Plaintiffs and their counsel is denied.[35] A judgment and order consistent with this Memorandum Opinion will be entered.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:   September 29, 2010

COPY TO:

**Michael K. Daniels**
Attorney for Plaintiffs
P.O. Box 1640
Albuquerque, NM 87103-1640

**James Rasmussen**
Attorney for Defendant
P.O. Box AA
Albuquerque, NM 87103-1626

---

[35] While this Court has found that Plaintiffs do not have standing, and Wells Fargo's actions did not violate the stay, the law is not settled in this area. Plaintiffs should not be penalized for filing this adversary proceeding seeking a different result.